Lily C. Alphonsis
Bk. No.2805061
13502 Musick Road
Irvine, CA 92618

# US CITIZEN DETAINED BY IMMIGRATION

LILY C. ALPHONSIS, IN PRO PER

## UNITED STATED DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

LILY C. ALPHONSIS

    Plaintiff,

Vs.

THE PEOPLE OF THE STATE OF CALIFORNIA,
JACKIE LACEY, DISTRICT ATTORNEY
SUSAN Y. JUNG, DEPUTY

    Defendant

Case No.: **CV14 00499 (DFM)**

**COMPLAINT FOR DAMAGES: FALSE ARREST AND WRONGFUL IMPRISONMENT, THEIVERY, CONSPIRACY, DEFAMATION, RACIAL DISCRIMINATION & EMOTIONAL DISTRESSES**

**DEMAND FOR JURY**

    Plaintiff Lily C. Alphonsis for its complaint against the Defendant, The Poeple of the State of California, Jackie Lacey District Attorney, Susan Y. Jung Deputy, alleges as follows:

### INTRODUCTION

    1. This is an action brought by the Plaintiff Lily C. Alphonsis on the Defendant The Poeple of the State of California, Jackie

RECEIVED
CLERK, U.S. DISTRICT COURT
JAN 1 4 2014
CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT
JAN 2 2 2014
CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

Lacey, District Attorney and its Deputy Susan Y. Jung, resulting from case Number BA 384459, when the Defendant conspired and compiled false witnesses and information to wrongfully and falsely imprisoned and convicted the Plaintiff of violation of Sections 550(A)(1), 118(A), 118(A). Giving the nature of this case, the only way the Plaintiff believes she could achieved real justice is to bring this action to this court for the Defendant to be ordered to answer for its unlawful prosecutorial tactics that were used to falsely imprisoned and convicted the Plaintiff of the above stated crimes that, the Plaintiff didn't commit.

## PARTIES

2. Plaintiff Lily C. Alphonsis is a resident of Beverly Hills, California.

3. The People of the State of California, Jackie Lacey District Attorney and its Deputy Susan Jung are at the time of this complaint, residents of Los Angeles, California.

## SUMMARY

4. The Plaintiff alleges in court that the Defendant the People of the State of California, Jackie Lacey, District Attorney and its Deputy Susan Y. Jung conspired with certain individuals who were after the Plaintiff Lily C. Alphonsis. Since the year 2009 certain individuals discovered the Plaintiff's confidential relationship with the late singer Michael Jackson. The Plaintiff believes that, after several attempts to destroy her life were unsuccessful, they finally conspired with some individuals in two different governmental agencies to destroy the Plaintiff's life by enforcing bogus charges against the Plaintiff.

5. The Plaintiff believes and alleges that after years of harassment, monitoring of her every moments, phone tapping and tracking by certain individuals and investigators from the

- 2 -
COMPLAINT FOR DAMAGES

Defendants office, they conspired with Bank of America and finally achieved their aim.

6. The Plaintiff alleges that the Defendant conspired with Investigators Juan Flores, Wayne Hasegawa, false witness Alice Lewis, formally known as Alice Macanally, the Plaintiff's attorney John Powers from the Los Angeles Public Defender's office, Eduardo Castellon an agent from Department of Motor Vehicle, and Thomas May, a Homeland Security agent, to falsely and wrongfully imprisoned and deport the Plaintiff to another country.

## STATEMENT OF PERTINENT FACTS

7. On May 20, 2011, Investigator Juan Flores presented DMV documents and an Insurance Fraud charges against the Plaintiff. The Insurance Fraud charges were issued after 4 years of the incident. He claimed the Plaintiff committed Insurance Fraud, on or about 04/02/07. The Investigator obtained an arrest warrant against the Plaintiff, which was ordered by Judge Robert C. Vanderet and issued a warrant arrest in an amount of $25,000.00.

8. On April 25, 2012, the Plaintiff was followed around and arrested for a warrant by two Los Angeles Police officers, who then physically abused and verbally harassed the Plaintiff and put her in jail.

9. On April 26, 2012, the Plaintiff appeared in court for arraignment by Judge Shelly Torrealba and was represented by a court appointed attorney Baker Ostrin. The Plaintiff pleaded not guilty to count 01. 550(A). The Plaintiff was ordered to return to court on 06/06/12.

10. On June 6, 2012, the Plaintiff appeared in court and was represented by Public Defender Alba Marrero. Preliminary hearing was set for 08/27/12.

11. On August 27, 2012, the Plaintiff appeared in front of Judge James N. Bianco. Represented by court appointed attorney

Sampda Kedia. The Plaintiff requested Pro Per, after analyzing and raising concerns about the behavior of the appointed Public Defender. The court defers the request.

12. On September 5, 2012, the Plaintiff appeared in Pro Per in court and waived her rights to a counsel. Judge James N. Bianco advised the Plaintiff against her Pro Per request. But, she enforced it. The Defendant Susan Y. Jung requested fresh fingerprints from the Plaintiff. The Plaintiff requested the Judge to deny that request, however the Defendant claimed the Prints are needed to examine the case and the Plaintiff's true identity. Judge N. Bianco ordered the Plaintiff to provide the fingerprints for the so-called analysis by the Defendant.

13. On October 5, 2012, the Plaintiff appeared for the Preliminary hearing in Pro Per. The Plaintiff clarified her identity and requested the court to rectify her name. The Plaintiff explained to the Judge that the names she was being addressed and accused under is not her name. The Defendant Susan Y. Jung gave the Plaintiff some of the case discovery and claimed she had to edit some of the discovery before it could be released to the Plaintiff.

14. On October 25, 2012, the Plaintiff appeared in court and released her Pro Per status after careful analysis of the case discovery. The Plaintiff decided that it would be better for an attorney to represent her case. The Public Defender's office was re-appointed. An unknown driver followed the Plaintiff on her way out of court and attacked the Plaintiff.

15. On November 9, 2012, the Plaintiff appeared in court and was represented by Public Defender John Powers. The Plaintiff met with Public Defender John Powers and brought certain concerned issues in her case to his attention. She made it clear to her attorney that she will not accept any Plea Deals and would like to go to trial to prove her innocence in the case. The Public Defender assured the Plaintiff of his 30 plus years of experience in

handling Insurance Fraud cases, and insisted the case doesn't have any solid evidences. He advised her to take a break and relax.

16. On December 11, 2012, The Plaintiff appeared in court and was represented by P.D John Powers. Attorney Powers brought a Plea Deal that the Defendant Susan Y. Jung offered the Plaintiff. The Defendant Susan Y. Jung requested the plaintiff to plead guilty to a misdemeanor charge. The Plaintiff reminded her P.D John Powers that she meant every single word in their last discussion and firmly reiterated to him that she will not take any plea deals. D.P John Powers wasn't happy about her decision. The case was scheduled for a Preliminary hearing.

17. On February 1, 2013 the case was called for a Preliminary hearing after almost a year of continues dates. The counsels claimed they weren't ready for the hearing and asked the court to push the date back to 02/28/13.

18. On February 27, 2013, D.P John Powers finally decided to meet up with the Plaintiff, a day before the Preliminary hearing to go over the case. During the meeting, the Plaintiff's attorney questioned her about a phone call she made to the Defendant's office inquiring about Susan Y. Jung's supervisor. The Plaintiff asked P.D John Powers about how he discovered that she had placed a phone call to the Defendant Susan Y. Jung's office. He claimed it didn't matter how he became aware of the phone call. John Powers then went ahead and notified his client that, The Defendant Susan Y. Jung had decided to retaliate against the Plaintiff's actions by adding 6 new additional counts of fraud to her case.

18A. John Powers also disclosed to the Plaintiff that, the Defendant Susan Y. Jung decided to introduce old DMV application evidence to charge her with 6 additional counts of perjury and one insurance fraud. Bringing the charges to a total of 7 counts of fraud.

18B. The Plaintiff's attorney elaborated on a new discovery that the Defendant Susan Y. Jung suddenly presented to him. The Defendant Susan Y. Jung claimed that within a few days of conducting a search in the California Vital Records System. She discovered that the Plaintiff didn't have any birth record in the system under her given name. According to John Powers, the Defendant Susan Y. Jung informed him that she called Homeland Security to verify the validity of the Plaintiff's U.S.A passport, and a Homeland Security agent named Thomas May informed the Defendant the Passport was fraudulently obtained.

18C. John Powers enumerated the details of the Defendant's new discovery by stating that, she also contacted Eduardo Castellon, an agent with the special investigative unit at the Department of Motor Vehicles and was also informed that the Plaintiff obtained and filled out several DMV applications under a different name with fake Social Security card/number and a fake USA Passport.

18D. John Powers then advised the Plaintiff that the Defendant Susan Y. Jung is willing to drop the other charges, if she takes a plea deal. The Plaintiff laughed it off and reminded him for the last time, she will not take any deal. The Plaintiff advised P.D John Powers to inform the Defendant Susan Y. Jung that she will see her in court and she should present whatever evidence she have against her in court. The Plaintiff then realized that John Powers was trying to force her to take the Plea Deal. The Plaintiff became stern about her decision. Out of rage and frustration, P.D John Powers told the Plaintiff he was tired of the Plaintiff's bullshit and she would be shipped back to wherever the hell she was born. The Plaintiff couldn't believe her ears. But kept and gained her composure and informed her attorney that she will meet them in court the following day.

19. On February 28, 2013, the Plaintiff appeared for a Preliminary hearing, which was presided by Judge Mary Lou Villar.

- 6 -
COMPLAINT FOR DAMAGES

During the Preliminary hearing, the Defendant presented all her false witnesses and Photo shopped DMV applications and her 7 counts offenses. 5 out of the 7 counts were practically the same offense repeated 6 times.

20. The Defendant called its key witness for the Insurance Fraud case; Alice Lewis was called on the stand and took an oath. She was questioned to identify the Plaintiff. She immediately identified the Plaintiff as the woman she was involved with in a car accident 4 years ago. The witness Alice Lewis then contradicted her own testimony in her DMV hearing on October 3, 2007. The witness was asked if she exchanged information with the Plaintiff. She testified that, though the Plaintiff was irate, she willingly exchanged information with her. When asked about the date and time she called her insurance company. She testified that she called her insurance company the same day the accident occurred.

21. During the Preliminary hearing, the Defendant called one of its lined up witnesses for the Insurance fraud case, Patrick Cleary. The witness claimed he spoke to the Plaintiff over the phone, but never met her in person. The Defendant's witness Patrick Cleary then testified that, he presented pictures of the Plaintiff's car damages to Alice Lewis to identify the car. Alice Lewis then went ahead and claimed that, the damages on the Plaintiff's car that occurred on the Plaintiff's accident, dated on April 5, 2007, were the same damages that Alice Lewis witnessed on the day of her accident on April 2, 2007.

22. The Defendant's next witness Mohammed Malik was called on the stand. According to the Mechanic who fixed the Plaintiff's damages on her car. The Plaintiff presented her car to him in the morning of April 6, 2007, the very next morning the accident occurred. The Plaintiff ordered the car to be fixed and she paid for her damages in cash without dealing with any insurance company.

23. The Defendant called its witness for the 6 counts of DMV applications perjury; Eduardo Castellon was called and sworn in. According to his testimony, he discovered that the Plaintiff presented fraudulent documents because of a written statement that was made by a DMV clerk. He claimed a clerk left some notes on one of the applications that, the clerk thought possibly that the Passport and a Social Security Card, which was provided, were fraudulent or counterfeit in a 6/25/04 application. He confirmed that two different US passport numbers were presented for the applications on June 2004 and 2009. He claimed the Plaintiff obtained different Drivers License with different citizenships and different date of births with fraudulent documents. According to him, though DMV makes copies of all documents that are presented at its locations, in this particular case, there are no copies of the alleged fraudulent documents on file. Later on in his testimony, the same agent admitted that the Administration of Social Security was contacted and they verified and confirmed that, the social security number was issued for the Plaintiff.

24. The Defendant next witness was a forensic Identification Expert, Edna Roches. According to the forensic expert's testimony, after careful examination and comparison of the Plaintiff's fingerprints to the fingerprints on the DMV applications and other documents, she concluded that the prints on all the documents are a perfect match.

25. Investigator Juan Flores was called on the witness stand. He claimed the Plaintiff gave him conflicting date of births and names. However he couldn't recall if the Plaintiff actually gave him a specific name and date of birth during an interview.

26. The Defendant's witness from Homeland Security claimed that he had compared the Plaintiff's fingerprint to an immigrant's fingerprint in the FBI database system, and he came to a conclusion

that the Plaintiff is an immigrant who entered into the country in the 1990s.

27. According to Thomas May's testimony, the Plaintiff's Passport that has been deemed as fraud or counterfeit was actually a valid Passport that was issued by the US State Department. The Defendant then asked the Homeland Security agent about the Birth Certificate that was used for the passport application. He claimed that his contact at the US Department of State didn't disclose any information about the Birth Certificate on file to him. However, DMV agent Eduardo Castellion, the same agent who claimed both the Plaintiff's Social Security number/card and Passport were counterfeit documents, had notified him that the birth certificate was also fraudulent. Though agent Castellion testified he had never seen a copy of the birth document.

28. According to Homeland Security agent Thomas May, after given that information by the DMV agent, he then concluded that the Plaintiff is an immigrant who came into the USA in the 1990s through visa and somehow fraudulently obtained a USA passport and changed her name.

29. During the Defendants presentation at the Preliminary hearing. The Defendant Susan Y. Jung admitted in her statement that she has in fact, discovered the Plaintiff's birth record during her search in the California Vital Records system and the information she found matched the Plaintiff's information in her passport. She then retracted her statement and claimed she didn't find any such record in the system that matched the information in the passport.

30. The Defendant stated in her final statement during her request to place the Plaintiff in jail to answer for her true identity, that she didn't know the real identity of the Plaintiff. The Defendant claimed that though the Plaintiff has been fingerprinted and her prints have been checked throughout the FBI system. They still don't know her true identity, insinuating that

COMPLAINT FOR DAMAGES

she might be someone else, even though the State Department identified her as a valid citizen with a U.S Passport.

31. According to the Defendant, throughout the course of the case, the Plaintiff proved her sophistication and intellectual capabilities, and for that matter, the Defendant deemed it proper and requested the Judge to place a hold on her in jail to identify her true identity. The Plaintiff's attorney also supported the Defendant's request by suggesting that ICE should place a hold on his client in jail.

**FIRST CAUSE OF ACTION:**

FRAUD

32. Defendant Susan Y. Jung used unlawful and unethical prosecutorial tactics by working with Investigator Juan Flores and DMV agent Eduardo Castellon and manipulated the Plaintiff's fingerprints by inserting them into forged DMV applications in the DMV data system. The Plaintiff was then accused of using different names and dates of births to obtained Driver Licenses.

33. The names that the Plaintiff was accused of using will be proved in this litigation that she is a different person with a different date of birth.

33. It will be proved that the Plaintiff was victimized for sharing a name with another person.

34. It will be proved in court that the Defendant and its DMV conspirator photo-shopped images on different DMV application form to convict the Plaintiff of perjury.

35. The Plaintiff will prove it to the court that some of the applications contained dates that conflicted with the location of the Plaintiff.

36. A fact, which will be displayed in court, that, on some of the application dates, the Plaintiff unknowingly and accidentally walked into the middle of a gang shootings activity

and was shot in the leg and became immobile in another State. The truth, which shows, it was impossible for the Plaintiff to have been in Los Angeles DMV location to have filled out those applications.

37. It will be proved in court that Investigator Juan Flores used unlawful investigative tactics to obtained information and also manipulated the Plaintiff's information to instigate and initiated bogus charges in this case.

## SECOND CAUSE OF ACTION

FALSE ARREST AND WRONGFUL IMPRISONMENT

38. It will be proved in court that, the Defendant and its investigators' abused authority by harassing certain people to get them to admit certain statements. The Defendant used wrongful tactics by presenting false documentations, witnesses and manipulated the judicial system to her and her conspirator's advantage by falsely arresting the Plaintiff with fake charges.

39. The Defendant presented a false witness Alice Lewis to testify against the Plaintiff. It will be proved in court that, the same Alice Mcanally now known as Alice Lewis testified under Oath on a DMV hearing on October 3, 2007. Six months after she reported a so-called accident with the Plaintiff's information, Alice Lewis testified that she didn't know/have ever met the Plaintiff in her life. A fact that was known to the investigators in this case, yet the Defendant put the false witness Alice Lewis under oath to testify against the Plaintiff.

40. The Defendant Susan Y. Jung worked with the Plaintiff's own Public Defender John Powers and wrongfully imprisoned the Plaintiff.

41. It will be proved in court and an explanation will be demanded from the Los Angeles Public Defenders office on why a veteran of 30 years plus Defense Attorney will recommend to the

court to put his own client in jail and request Homeland Security to place a hold on his client. An explanation will be demanded on why the Public Defender refused to subpoena the Plaintiff's medical record to exonerate her from the bogus charges; after the Plaintiff showed her attorney certain forged evidences in the Defendant's discovery.

42. It will be proved that the Defendant worked with Public Defender John Powers and Homeland Security agent Thomas May to falsely arrest and wrongfully imprisoned the Plaintiff after she placed a phone call to expose the Defendant's dirty tactics.

43. It will be shown in a court of law that the Defendant manipulated with evidences, and the legal system. Which in turn left the Plaintiff with no choice to properly defend her innocence.

44. The court will know that the penitentiary housing system left the defendant no choice, but to take a plea deal in order to survive.

### THIRD CAUSE OF ACTION

CONSPIRACIES

45. The court will get to know the fact that, this whole case was brought up against the Plaintiff to question her credibility in any case she decided to reveal certain facts about Michael Jackson. The Plaintiff was pursued immediately after his death, and certain attempts to take her life were unsuccessfully made.

46. This court will review evidences that show the Defendant retaliated because, she discovered that the Plaintiff wasn't stupid and the Plaintiff knew the tactics that the Defendant was using, and was going to expose it. For the reasons, the only way for the Conspirator's including the Defendant to save their selves were to do everything in their power to imprison or to get rid of the Plaintiff in whichever ways possible. In doing so, the Defendant conspired with Investigator Juan Flores, Public Defender John

Powers, DMV agent Eduardo Castellon and Homeland Security agent Thomas May to ensure that the Plaintiff was jailed and deported to a different country.

47. It will be shown that just about one month into the Michael Jackson Trial, the Defendant was followed around and was attacked and shot at. And that upon using her trained combative skills she was able to escape her attacker with just cuts and bruises.

48. The court will get to know elaborated reasons why the Defendant suddenly switched from one count of criminal offense against the Plaintiff to 7 counts of criminal offenses.

49. This court will get to know the details of the Conspirator's activities including gaining access into the Plaintiff Bank accounts, birth records, passport records, school records, employment records, DMV records and Social Security records.

### FOURTH CAUSE OF ACTION

RACIAL DISCRIMINATION

50. The Plaintiff will prove to the court on the details of the Defendant racial discrimination against the Plaintiff. It will be showed in court on how she was portrayed as another person and depicted/accused of changing her appearance and features to disguise her crimes.

### FIFTH CAUSE OF ACTION

DEFAMATION

51. The Defamation in this case has caused tremendous damages to the Plaintiff's image. The Plaintiff's once clean record is now tainted with a felony. A bogus crime she never committed. This court will be showed the details of the damages that the defamation has caused the Plaintiff.

## SIXTH CAUSE OF ACTION

### EMOTIONAL, PHYSICAL AND MENTAL DISTRESSES

52. The emotional, physical and mental distresses the Defendant's case had caused the Plaintiff can never be compensated. The freedom that was taken from the Plaintiff could never be given back to her. The mental distress damages, and emotional stress that the Plaintiff encountered as a result of being confined to a small cell for 23hours a day for 2 months, is simply inhumane, especially for an innocence victim who didn't commit any crime. The Physical damages she encountered will be showed in court.

### REQUEST FOR RELIEF

53. The Plaintiff prays for judgment against the Defendant as follows:

The Defendant must remove all charges against the Plaintiff and grant the Plaintiff's freedom to enable her to live her life.

54. The Defendant must be held accountable for the purging of the Plaintiff records. And must be forced to reinstate all purged records.

56. The Defendant must be held accountable for fraudulently compiling information and false witnesses against the Plaintiff to destroy her life.

57. The Defendant must purge any arrest record and any collected information including collected DNA samples that were taken from the Plaintiff, this court must order its removal from the system.

58. The Defendant must be held accountable for fraud and perjury.

59. The Plaintiff prays that the court will review all the personal damages that the Defendant has caused the Plaintiff in this case and rewards her accordingly.

60. For pre-judgment in favor of Plaintiff in an amount to be determined at trial.

61. For expenses of suit incurred herewith

62. For reasonable attorney's fee, and such other relief as the Court may deem just and proper.

## CONCLUSION

63. The Defendant in this case has displayed that the Criminal Justice System is bias. The District attorney's office uses unlawful tactics to falsely imprison victims because of the advantageous immunity that protects them. This case will display the unlawful prosecutorial tactics that are used to falsely imprison innocence victims.

The Defendant's actions in this case have clearly confirmed the notion that any citizen can be victimized by corrupted law enforcement personals, prosecutors and people who hold certain positions in governmental agencies.

64. The Plaintiff hopes and pray that this court will duly enforced the proper judicial laws to hold the Defendant accountable for all the above stated actions. And that no one is above the law regardless of one's acquired position. People who hold certain positions in governmental agencies must know that, having access to vital information about a person doesn't permit one to abuse authority and manipulate with accessible information for destruction of one's life.

We claim to be a nation of law and order, but our actions and legal system are set up to destroy innocent lives. The Criminal Judicial System is practically a joke, the penitentiary system is a major business that is aimed to enslave innocent victims for profitability, which is nothing but the new era of modernized enslavement.

Who looks after the innocent citizen when the Judicial System is set up to victimize and enslave its citizens? I pray this court will prove me wrong that; there is still justice that prevails in some parts of our legal system.

DATED: January 6, 2014

_____
LILA ALPHONSIS
In Pro Per

- 16 -
COMPLAINT FOR DAMAGES

TO CLERK OF THE UNITED STATED DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:

312 North Spring Street

Los Angeles, CA 90012

January 12, 2014

Dear Sir/Madam:

I am a US citizen that has been unlawfully detained by ICE. I am currently detained at 13502 Musick Road. Irvine, CA 92618. I am fighting for my legal right as a born US citizen that has been unlawfully detained. I have attached 3 litigations for your filing.

Kindly let me know how I can obtain copies of each litigation to serve the opposing parties.

I would truly appreciate your assistance in this matter, as I do not have any legal representaion who is assisting me in this matter. I am in Pro se in all three litigations. Please help.

Truly yours,

*[signature]*

Lily Cassandra Alphonsis

Bk. No.2805061

13502 Musick Road

Irvine, CA 92618

January 12, 2013.

# CERTIFICATE OF SERVICE

TO:   United Stated District Court
for the Central District of California
312 North Spring Street
Los Angeles C.A


IN THE MATTER OF:                                              CASE No.:
   LILY C. ALPHONSIS                                     A.077-289-566
   RESPONDENT                                            Bk. No. 2805061

I CERTIFY, I AM SUBMITTING AN ORIGINAL COPY OF THE FOLLOWING DOCUMENTS REGARDING MY MOTION TO REMAND REQUEST BEFORE THIS COURT:

1. Original Copy of litigation
2. Certificate of Service for Opposing Party/Los Angeles District Attorney's office.

BY PLACING A TRUE AND COMPLETE COPY IN AN ENVELOPE, POSTAGE PREPAID, AND MAILING IT, ADDRESSED AS FOLLOW:

   Lily C. Alphonsis
   Boooking No. 2805061
   A 077-289-566
   James A. Musick Facility
   13502 Musick Road
   Irvine, CA   92618.


Respectfully Submitted,

_____
LILY CASSANDRA ALPHONSIS

